IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

RICHARD ADAMSON,

        Plaintiff,

v.

UNION PACIFIC RAILROAD, et al.,

        Defendants.

Case No. 21-CV-047-JFH-CDL

## ORDER

Before the Court is the Motion to Remand ("Motion") filed by Plaintiff Richard Adamson. Dkt. No. 16. Defendants filed a Response in Opposition. Dkt. No. 20.

## BACKGROUND

Plaintiff was employed by Union Pacific for almost fifteen (15) years prior to his termination. *Id.* at ¶¶ 7-8. Plaintiff was a collective bargaining unit employee and represented by a union. *Id.* at ¶ 10. Defendants contend Union Pacific is a rail carrier subject to the RLA and Sheet, Metal, Air, Rail, Transportation, Transportation Division ("SMART-TD"), which is the successor to United Transportation Union. Dkt. No. 2 at ¶ 9; *see also* Dkt. No. 2-5. Previously, in 2017, Plaintiff was terminated for allegedly stealing safety materials from Union Pacific. *See id.* at ¶ 9, *see also Richard Adamson and Billy Graves v. Union Pacific Railroad et al.,* Case No. 18-CV-432-CVE, Dkt. No. 2 at ¶¶ 18-22. Plaintiff was ultimately reinstated in December 2017. 18-CV-432-CVE, Dkt. No. 2 at ¶ 32. As a result of the 2017 matter and other matters associated with Plaintiff's FMLA leave, Plaintiff brought suit against Union Pacific and Lloyd Plymale on August 28, 2018 alleging claims for discrimination, interference and retaliation. *See* 18-CV-432-CVE, Dkt. No. 2. The first case was ultimately settled and dismissed on December 20, 2019. *See* Case No. 18-CV-432-CVE at Dkt. Nos. 65 and 67.

Plaintiff filed the instant suit on April 16, 2020 in the District Court for Nowata County, State of Oklahoma. Dkt. No. 2-3. On September 22, 2020, Plaintiff filed an Amended Petition. Dkt. No. 2-1. Plaintiff alleges on the evening of August 14, 2018/early morning of August 15, 2018, he began his shift as a Footboard Yardmaster overseeing a small crew of workers. Dkt. No. 2-1 at ¶¶ 11-12. Plaintiff observed lighting in the area and, out of concern for his crew, directed his crew to end their shift early. *Id.* at ¶¶ 13-14. Subsequently, Plaintiff was terminated. *Id.* at ¶ 16. On August 28, 2018, Plaintiff participated in an administrative proceeding concerning his termination. *Id.* at ¶ 17.

Plaintiff asserts a state law *Burk* tort claim against Defendant Union Pacific Railroad ("Union Pacific") and a state law malicious interference with contractual relationship claim against Defendants Lloyd Plymale and Kelly Smith. Dkt. No. 2-1. As to his *Burk* claim, Plaintiff contends he was unlawfully terminated in retaliation for filing the first lawsuit, the assertion of his right to access the courts and reporting unsafe working conditions. Dkt. No. 2-1 at ¶ 22. Plaintiff alleges Defendants Smith and Plymale interfered with Plaintiff's contractual relationship with his employer, Union Pacific, and Smith and Plymale caused Union Pacific to beach the contract. *Id.* at ¶¶ 29-32.

On February 3, 2021, Defendants removed the action from state court to this Court. Dkt. No. 2. Defendants premised the removal on their contention that Plaintiff's state law claims are preempted by federal law and that the individual Defendants were fraudulently joined thereby giving this Court diversity jurisdiction. *See id.* Plaintiff filed the instant Motion contending he only asserted state law claims and those claims are not preempted by federal law. Dkt. No. 16. Additionally, Plaintiff contends he has valid claims against the individual Defendants, and they were not fraudulently joined. *See id.* Defendants filed a Response in opposition. Dkt. No. 20.

The Response re-urges many of the same arguments advanced in the Notice of Removal. *See* Dkt. No. 20.

## STANDARD

### I. Federal Question Jurisdiction

To remove a case to federal court under 28 U.S.C. § 1441, the claim must "aris[e] under" federal law. *Deford v. Soo Line R. Co.*, 867 F.2d 1080, 1084 (8th Cir. 1989). To establish federal question jurisdiction for removal purposes, the federal question must be "presented on the face of the plaintiff's properly pleaded complaint." *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 830, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002); *Garley v. Sandia Corp.*, 236 F.3d 1200, 1207 (10th Cir.2001) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Under the "well-pleaded complaint rule," a suit "arises under federal law 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law." *Turgeau v. Administrative Review Board*, 446 F.3d 1052, 1060 (10th Cir.2006) (quoting *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir.1996)). The plaintiff is the "master of the claim and may prevent removal by choosing not to plead a federal claim even if one is available." *Id*. Thus, a plaintiff "may avoid federal question jurisdiction by exclusive reliance on state law." *City of Park City v. Rural Water Dist. No. 2*, 960 F.Supp. 255, 257–258 (D.Kan.1997) (citing *Caterpillar, Inc.*, 482 U.S. at 392). A defendant cannot "change the character of a plaintiff's case" by inserting allegations of a federal nature in the petition for removal. *Warner Brothers Records, Inc. v. R.A. Ridges Distributing Company, Inc.*, 475 F.2d 262, 264 (10th Cir.1973). However, "a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of his claim." *Turgeau*, 446 F.3d at 1060–61; *Schmeling*, 97 F.3d at 1339 (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).

Furthermore, a defense of federal law, including the defense of federal preemption, is traditionally not a basis for removal. *Deford,* 867 F.2d at 1084; *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 4 (1983). However, there is an exception to this general rule under the "complete preemption doctrine." *Deford*, 867 F.2d at 1084. Under this doctrine, "when the preemptive force of a federal statute is 'extraordinary,' it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Caterpillar, Inc. v. Williams,* 482 U.S. 386 (1987)). The doctrine prohibits a plaintiff from defeating removal by failing to plead necessary federal questions in a complaint and allows a defense of federal preemption as a basis for removal. *Id.*

II. **Diversity Jurisdiction**

To invoke diversity jurisdiction, "a party must show that complete diversity of citizenship exists between the adverse parties and that the amount in controversy exceeds $75,000." *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013) (quoting *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006)). Complete diversity is lacking when the plaintiff has the same residency as even a single defendant. *Id.* However, if a defendant is fraudulently joined, they can be ignored for the purposes of assessing complete diversity. *See Smoot v. Chicago, Rock Island & Pac. R.R. Co.,* 378 F.2d 879, 881-81 (10th Cir. 1967). "To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher,* 733 F.3d at 988 (quoting *Cuevas v. BAC Home Loans Servicing, LP,* 648 F.3d 242, 249 (5th Cir. 2011)). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).

## DISCUSSION

I. **RLA Preemption of the *Burk* Claim and Malicious Interference Claim**

Defendants argue the *Burk* claim asserted against it and the malicious interference claim asserted against Plymale and Smith are completely preempted by the Railway Labor Act ("RLA"). Dkt. No. 20 at 4-9. Therefore, such preemption provides a basis for Defendants to remove this action to federal court. Dkt. No. 2 at 3 and Dkt. No. 20 at 4. Defendants focus their argument on their belief that the relevant collective bargaining agreement must be interpreted to resolve Plaintiff's claims. *See* Dkt. No. 20 at 4-9. Plaintiff disagrees with Defendants' position. Dkt. No. 16 at 8-10.

Defendants rely on the ordinary preemption analysis to contend this case was properly removed pursuant to complete preemption.[1,2] Dkt. No. 20 at 4-9. This analysis misses the mark. The issue before the Court is whether the RLA gives rise to complete preemption thereby giving Defendants a means to remove the action. Defendants do not cite any cases wherein the Tenth Circuit or the Supreme Court has held the RLA completely preempts state law claims.

---

[1] Ordinary preemption is a defense, which does not appear on the face of a well-pleaded complaint, and therefore does not provide a basis for removal. *Caterpillar, Inc.*, 482 U.S. 386, 393 (1987) ("It is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption."). In contrast, under the complete preemption doctrine, the preemptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.*

[2] For example, Defendants cite the following cases: *Ertle v. Continental Airlines, Inc.,* 136 F.3d 690 (10th Cir. 1998) (affirming district court's dismissal of breach of contract claim because the claim required interpretation of the CBA and was preempted under the RLA); *Carmack v. National R.R. Passenger Corp.*, 486 F.Supp.2d 58 (D. Mass. 2007) (granting summary judgment to defendant because plaintiff's state law claims were preempted by the RLA); *Healy v. Metropolitan Pier and Exposition Authority*, 804 F.3d 836 (7th Cir. 2015) (affirming district court's dismissal of tortious interference claim because it was preempted by the LMRA); *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620 (8th Cir. 1989) (summary judgment case); *Cumpston v. Dyncorp Technical Service, Inc.*, 76 Fed. Appx. 861 (10th Cir. 2003) (unpublished) (affirming dismissal of claim for tortious interference because it was preempted by the LMRA).

Courts agree that "[o]rdinary preemption is plainly a viable defense under the RLA: pursuant to 45 U.S.C. §§ 153 (governing railroads) and 184 (governing airlines), minor disputes must be heard in the first instance before arbitral panels, not courts, and state-law claims that are disguised minor disputes are therefore preempted by the RLA." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005). The test for ordinary preemption under the RLA is the same as the test established by *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988), with respect to § 301 of the Labor Management Relation Act ("LMRA"). *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 262-63 (1994) (holding that *Lingle* "provides an appropriate framework for addressing pre-emption under the RLA" and "adopt[ing] the *Lingle* standard to resolve claims of RLA preemption"); *see also Mowry v. United Parcel Service,* 415 F.3d 1149, 1155 (10th Cir. 2005) (noting the *Hawaiian Airlines* Court applied the *Lingle* framework to the RLA).

In *Lingle,* the Supreme Court held that the LMRA preempted state law only if a state law claim is dependent on the interpretation of a collective bargaining agreement. *Lingle,* 486 U.S. at 413. The Supreme Court has held that § 301 of the LMRA is one of the few statutes that has the requisite extraordinary preemptive force to support complete preemption. *See Avco Corp. v. Machinists,* 390 U.S. 557, 560 (1968).

Courts are split on the question of whether the RLA gives rise to complete preemption. *Southwest Airlines Pilots Association v. Boeing Company,* No. 19-CV-2680, 2020 WL 2549748, at *4 (N.D. Tex. Apr. 29, 2020). "[C]ourts disagree about whether the holding in *Hawaiian Airlines* means that the analysis of the LMRA's complete preemption also applies to the RLA, or if it means that the RLA provides only ordinary preemption." *Id.*; *see also Sullivan*, 424 F.3d at 273-74 ("The key question, however, is whether the analogy drawn by the Court between the RLA

and LMRA preemption as to *ordinary* preemption also extends to *complete* preemption." (emphasis in original)).

The Second Circuit has held that the RLA does not support complete preemption. *Sullivan*, 424 F.3d at 273. In *Sullivan,* the Second Circuit relied on *Beneficial National Bank v. Anderson,* 539 U.S. 1 (2003), and determined that *Hawaiian Airlines'* analogy between the RLA and LMRA does not extend to complete preemption. *Id.* at 275. In *Beneficial National Bank*, the Supreme Court stated that it had previously found complete preemption under only the LMRA and ERISA: "In the two categories of cases where this Court has found complete preemption – certain causes of action under the LMRA and ERISA – the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set for procedures and remedies governing that cause of action." *Beneficial National Bank*, 539 U.S. at 8.[3] The Second Circuit reasoned that if *Hawaiian Airlines* had established that the RLA completely preempted state law causes of action within its scope, the Supreme Court in *Beneficial National Bank* would have listed the RLA as a third category of complete preemption. *Sullivan,* 424 F.3d at 275. Other circuits have determined the issue consistently with the Second Circuit. *See Ry. Labor Executives Ass'n v. Pittsburgh & lake Erie R.R. Co.,* 858 F.2d 936, 942-43 (3d Cir. 1998) (finding no complete preemption under the RLA); *Roddy v. Grand Trunk W. R. Inc.*, 395 F.3d 318, 326 (6th Cir. 2005) (same); *Hughes v. United Air Lines, Inc.,* 634 F.3d 391, 395 (7th Cir. 2011) (same); *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009) (same); *Geddes v. Am. Airlines, Inc.*, 321 F.3d 1349, 1357 (11th Cir. 2003) (same).

---

[3] Additionally, later in the *Beneficial National Bank* opinion, the Court determined the National Bank Act gave rise to complete preemption. *Beneficial National Bank*, 539 U.S. at 10-11; *see also Stark-Romero v. National Railroad Passenger Company*, No. CIV-09-295, 2010 WL 11602777, at *9 (D.N.M. Mar. 31, 2010).

In contrast, the Eighth Circuit has found complete preemption under the RLA. *Deford*, 867 F.2d 1080, 1085 (8th Cir. 1989). The Tenth Circuit has not expressly stated whether the RLA supports complete preemption. The Tenth Circuit has addressed RLA preemption in the ordinary preemption context, but not as a means to remove state law claims. *See e.g., Davies v. American Airlines, Inc.*, 971 F.2d 463 (10th Cir. 1992). Further, the Tenth Circuit has recognized ordinary preemption and complete preemption are distinct doctrines. *Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.,* 693 F.3d 1195, 1203 n.4 (10th Cir. 2012).

The United States District Court for the Northern District of Texas, relied on *Sullivan* to hold the RLA did not completely preempt a plaintiff's state law claims. *Southwest Airlines Pilots Assoc.*, 2020 WL 2549748, at *5. There, the Court stated:

> In *Beneficial National Bank*, the Supreme Court stated that it had previously found complete preemption only under the LMRA and ERISA. 539 U.S. at 8, 123 S.Ct. 2058. As the Second Circuit concluded in *Sullivan*, "[h]ad Hawaiian Airlines established that § 184 of the RLA, like § 301 of the LMRA, completely preempted state-law causes of action within its scope, the Court in *Beneficial National Bank* would have discussed three, not two, categories of cases involving complete preemption." *Sullivan*, 424 F.3d at 275.

*Id.* The Court further agreed with the *Sullivan* Court's conclusion that "applying *Beneficial National Bank's* test for complete preemption leads to the conclusion that the RLA does not support complete preemption, because a minor dispute under the RLA cannot be brought within the original jurisdiction of a federal court." *Id.* This is because the primary jurisdiction over RLA minor disputes exists with the adjustment boards. *See* 45 U.S.C. § 184; *see also Consol. Rail Corp. v. Ry. Labor Executives' Ass'n,* 491 U.S. 299, 304 (1989) ("The Board . . . has exclusive jurisdiction over minor disputes."). The Court held that it did "not have federal question jurisdiction under the complete preemption doctrine, even though the case will require interpretation of the CBA." *Id.* The Court remanded the case to state court. *Id.* at *6.

8

The appropriate initial inquiry in this case is to consider whether the RLA has completely preempted state law claims giving Defendants an avenue to remove this case. The Court is persuaded by *Sullivan* and *Southwest Airlines Pilots Association* that the RLA does not completely preempt state law claims. If it had, the Supreme Court would have recognized as much in *Beneficial National Bank*. For these reasons, the Court concludes that Plaintiff's *Burk* claim and malicious interference with contract claim are *not* completely preempted by the RLA. Therefore, Defendants cannot rely on the RLA as the vehicle to remove this case to federal court and this Court does not have federal question jurisdiction.

## II. FRSA Preemption of the *Burk* Claim

Defendants also assert Plaintiff's *Burk* tort is preempted by the Federal Railroad Safety Act ("FRSA"). Dkt. No. 20 at 9. Defendants note that to have a viable *Burk* claim there must be no adequate statutory remedy to protect the Oklahoma public policy goal. *Id.; see also Vasek v. Bd. Of County Com'rs of Noble County,* 186 P.3d 928, 932 (Okla. 2008). Defendants argue the FRSA provides the adequate statutory remedy because it explicitly provides protections for employees who report or refuse to participate in hazardous safety or security conditions. Dkt. No. 20 at 10; *see also* 49 U.S.C. § 20109(b).

To support this position, Defendants cite two cases that had different procedural postures than the case at bar. In *Debus v. Burlington Northern & Santa Fe Railway Company*, 157 F.Supp. 3d 1034 (D. Kan. 2016), the defendant sought dismissal "because an adequate remedy exist[ed] under the Federal Railroad Safety Act." *Id.* at 1036. The Court dismissed the plaintiff's public policy retaliation claim concluding the FRSA provided an adequate alternative remedy. *Id.* at 1039. In *Rayner v. Smirl*, 873 F.2d 60 (4th Cir. 1989), the Court was faced with a similar issue. After the case was removed to federal court, the defendant filed a motion to dismiss claiming the

state law claim was preempted by the FRSA. *Id.* at 62-63. The Fourth Circuit affirmed the district court's dismissal of the claim. *Id.* at 67. However, in *Debus* and *Rayner* the defendants did not use preemption to remove the cases. Once again, Defendants cite no Tenth Circuit precedent that has blessed the removal of a case based on FRSA preemption. In other words, Defendants have not established the FRSA completely preempts Plaintiff's state law claim. *Stark-Romero*, 2010 WL 11602777, at *9 ("The Supreme Court has interpreted complete federal preemption very narrowly, applying it to only three federal statutes – the FRSA is not one of [them.]").

Furthermore, in formulating their argument, Defendants ignore Plaintiff's allegation that he was discharged for filing the prior suit and asserting his right to access the courts. Dkt. No. 2-1 at ¶ 23. Defendants do not contend the FRSA provides an adequate remedy for such a grievance. For these reasons, the Court concludes the FRSA does not completely preempt Plaintiff's *Burk* claim.

**III.    Fraudulent Joinder**

Defendants also contend Defendant Smith was fraudulently joined and, thus, this Court has diversity jurisdiction. Dkt. No. 20 at 12-15. As stated above, Plaintiff also asserts a claim for malicious interference with a contractual relationship against the individual Defendants, Plymale and Smith. Dkt. No. 2-1 at ¶¶ 29-34. Plaintiff is a resident of Kansas and Defendant Smith is also a resident of Kansas. Dkt. No. 2-1 at ¶ 6; Dkt. No. 2 at ¶ 22; Dkt. No. 16 at 2 ("Adamson is a citizen of Kansas").

Defendants proceed on the theory that Plaintiff is unable to establish a cause of action against the non-diverse party in state court. The removing party "must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against the non-diverse defendant in state court." *Sang v. Smith*, No. 19-CV-686, 2020 WL 6472683, at *3 (N.D. Okla.

May 19, 2020) (quoting *Montano v. Allstate Indem.*, 211 F.3d 1278, at *1 (10th Cir. 2000) (unpublished)); *see also Loeffelbein v. Milberg Weiss Bershard Hynes & Lerach, LLP*, No. A. 02-2435, 2003 WL 21313957, at *5 (D. Kan. May 23, 2003). This standard is "more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action was commenced." *Montano*, 311 F.3d at *2 (internal citations omitted). A court may look beyond the pleadings to determine whether a joinder is fraudulent. *See Smoot,* 378 F.2d at 881-82. Additionally, any doubts arising from defective or inartful pleading should be resolved in favor of retention of state court jurisdiction. *Todd Holding Co., Inc. v. Super Valu Stores*, 755 F. Supp. 1025, 1028 (D. Colo. 1990) (quoting *Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61, 65 (10th Cir. 1957)).

Defendants argue Plaintiff does not state a plausible claim for relief against Defendant Smith. Plaintiff alleges Smith "is a supervisor, employed with [Union Pacific]. Specifically, Smith is an Assistant Manager of Operating Procedures." Dkt. No. 2-1 at ¶ 5. Plaintiff alleges he was terminated "due to a decision of Defendant Smith," "Smith appeared as a witness [at the administrative hearing] and provided numerous false testimony against Plaintiff to satisfy his agenda of terminating Plaintiff," "Smith stated he was going to fire the nighttime thieves who stole the gloves," and "[t]he individual Defendants made false statements to support the termination of Plaintiff." Dkt. No. 2-1. Plaintiff also alleges Defendant Smith caused Union Pacific to breach the contract with Plaintiff and interfered with and acted willfully, maliciously and in bad faith. *Id.* Defendants contend this claim is untenable because under Oklahoma law an agent of a principal cannot be held liable for interfering with the contract between the principal and a third-party. Dkt. No. 20 at 12.

To prevail on a claim for malicious interference with contract, Plaintiff must establish: 1) he had a business or contractual right that was interfered with; 2) that the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable; and 3) that damage was proximately sustained as a result of the complained-of interference. *Mac Adjustment, Inc. v. Property Loss Research Bureau*, 595 P.2d 427, 428 (Okla. 1979). Typically, an agent cannot be liable for interfering with a contract between his principal and a third party. *See Martin v. Johnson*, 975 P.2d 889, 896 (Okla. 1998); *see also Grillot v. Okla. ex rel. Univ. of Okla. Board of Regents,* No. CIV-19-241, 2019 WL 3558183, at *3 (W.D. Okla. Aug. 5, 2019). However, there is an exception to this rule. A plaintiff can prevail on a claim for tortious interference against an agent if the agent acts against the interest of the principal and in furtherance of the interests of the agent. *See Grillot*, 2019 WL 3558183, at *3.

Defendants contend Plaintiff's allegations fail to qualify Plaintiff's claim for the exception to the rule. Specifically, Defendants argue "Plaintiff's First Amended Petition is devoid of any factual averments to show that Defendant Smith's actions meet this narrow exception." Dkt. No. 20 at 14. However, Plaintiff does allege Smith "provided false testimonies against Plaintiff to satisfy his agenda of terminating Plaintiff." Dkt. No. 2-1 at ¶ 17. Plaintiff also alleges Smith acted in bad faith and his interference was not justified or privileged. *Id.* at ¶ 32.[4] The Court acknowledges Plaintiff has failed to plead with sufficient factual allegations that Smith was acting against the interest of Union Pacific.

---

[4] The Court reviewed the matters outside the pleadings submitted by Defendants. *See Smoot*, 378 F.2d at 881-82 (a court may look beyond the pleadings to determine whether a joinder is fraudulent). However, the collective bargaining agreement and the affidavits submitted do not concern the scope of Smith's duties or the authority he possessed. *See* Dkt. Nos. 2-5, 2-6 and 20-1. Therefore, the Court limits its inquiry to the pleadings and briefs.

However, the Court cannot conclude there is *no possibility* that Plaintiff will be able to establish a cause of action for tortious interference against Smith. *See Montano,* 211 F.3d at *1; *Sang,* 2020 WL 6472683, at *4; *Loeffelbein,* 2003 WL 21313957, at *5. And the Court must resolve factual issues in Plaintiff's favor. *Pampillonia*, 138 F.3d at 461. Therefore, the Court concludes Defendants failed to satisfy their "heavy burden" of establishing that Defendant Smith was fraudulently joined. Therefore, diversity jurisdiction does not exist.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand [Dkt. No. 14] is GRANTED and this case is REMANDED to the District Court for Nowata County, State of Oklahoma.

Dated this 30th day of September 2025.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE